UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
COMMODITY FUTURES TRADING COMMISSION,

          Plaintiff,

      -against-

EOX HOLDINGS LLC and ANDREW GIZIENSKI,

          Defendants.

------------------------------------x

MEMORANDUM DECISION
AND ORDER
18 Civ. 8890 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") brings this action against Defendants EOX Holdings LLC ("EOX") and Andrew Gizienski ("Gizienski") (collectively, "Defendants") pursuant to the Commodity Exchange Act ("the Act" or "CEA"), 7 U.S.C. §§ 1–27f (2015), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2019). The CFTC alleges that Defendants violated duties of trust and confidence owed to EOX customers, disclosed and/or failed to supervise the disclosure of nonpublic information for the benefit of Gizienski's discretionary trading, and that EOX failed to institute policies to minimize apparent conflicts of interest. (Compl., ECF No. 1.) Defendants move to transfer venue of this case to the Southern District of Texas pursuant to 28 U.S.C. §§ 1404(a), 1406(a), and 1631, principally arguing that it is the most convenient forum for this case, or, in the alternative, to dismiss this case or grant summary judgement pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, respectively. (See Mot. to Transfer, ECF No. 20; Mot. to Dismiss and for Summ. J. on Counts I and II of the Compl. as to EOX and Gizienski, and Mot. to

Dismiss All Counts Against Gizienski ("MTD and MSJ"), ECF No. 23.) Defendants' motion to transfer is GRANTED.[1]

## I. FACTUAL BACKGROUND

### A. Relevant Parties and Entities.

The CFTC is a federal agency "charged by Congress with the administration and enforcement of the [Commodity Exchange] Act and the Regulations promulgated thereunder." (Compl. ¶ 11.) It regulates products defined as commodities, "in which contracts for future delivery are presently or in the future dealt[.]" 7 U.S.C. § 1a(9). These contracts, regularly referred to as "futures," are bought and sold by futures traders on an auction market. (Compl. ¶ 15.) The CFTC has a principal office located in Washington, D.C., and regional offices in Chicago, Kansas City, and New York City. (*See id.* ¶ 11; *Contact*, U.S. COMMODITY FUTURES TRADING COMMISSION, https://www.cftc.gov/Contact/index.htm (last visited July 15, 2019).)

Defendant "EOX executes block futures and options trades[,]" often referred to as "block trades." (Compl. ¶¶ 12, 18.) Block trades differ from public trades in that they are privately negotiated transactions that must meet a quantity threshold and are executed apart from the public market, while publicly traded stock index futures do not require a quantity threshold and are often traded on public exchanges like the New York Stock Exchange. (*Id.* ¶ 18; *see also* ICE FUTURES U.S., INC., TRADING RULES, RULE 4.07 (2017), https://www.theice.com/publicdocs/rulebooks/futures_us/4_Trading.pdf; *Understanding Stock*

---

[1] Because this Court finds that transfer pursuant to 28 U.S.C. § 1404(a) is appropriate, it need not address Defendants' motion to dismiss for lack of personal jurisdiction and improper venue. (Joint. Mem. of Law of Defs. EOX Holdings and Andrew Gizienski in Supp. of their Mot. to Dismiss and for Summ. J. on Counts I and II of the Compl. as to Both Defs., and to Dismiss All Claims Against Gizienski ("MTD and MSJ Mem."), ECF No. 24, at 4) ("If transfer to the Southern District of Texas has been granted, Gizienski's motion to dismiss for lack of personal jurisdiction and improper venue is moot and is withdrawn.").)

2

*Index Futures*, CME GROUP, 1 (May 3, 2013), https://www.cmegroup.com/education/files/understanding-stock-index-futures.pdf.) EOX has principal offices in Houston, Texas, and New York, New York. (Compl. ¶ 12.)

Defendant Gizienski acts as a broker for EOX on its North East Power Desk. (*Id.* ¶ 13.) Brokers "in block futures trading identif[y] a counterparty to a customer order and match[] the customer's order to execute a transaction[.]" (Joint. Mem. of Law of Defs. EOX Holdings and Andrew Gizienski in Supp. of their Mot. to Dismiss and for Summ. J. on Counts I and II of the Compl. as to Both Defs., and to Dismiss All Claims Against Gizienski ("MTD and MSJ Mem."), ECF No. 24, at 5.) They thus "broker for both sides of the transaction[.]" (*Id.*; *see also* Decl. of Steven Valji, ECF No. 26, ¶ 6 ("In block trading, it is customary for a broker or brokerage firm to act as broker for both the buyer and the seller in a transaction, and this is well understood by customers of brokers in block trading.").) Gizienski lives in Houston and works in EOX's Houston office. (Compl. ¶ 13; *see also* Decl. of Andrew Gizienski in Supp. of Defs.' Mot. to Transfer and Dismiss for Summ. J. ("Gizienski Decl."), ECF No. 27 ¶¶ 1, 3.) The North East Power Desk "includes brokers in both the Houston and New York offices." (Decl. of Heath N. Dasso ("Dasso Decl."), ECF No. 37-1 ¶ 5.)

EOX brokers report their block trades to ICE Futures U.S. ("IFUS"). (*See* Compl. ¶ 19.) IFUS is "a board of trade designated as a contract market, and self-regulatory organization." (*Id.*) It "lists approximately 500 futures and options contracts on a wide range of products, including natural gas and power, agricultural commodities, equity indexes, and currencies." (*Id.*) IFUS is a Delaware corporation, and is located in New York. (*Id.*)

3

## B. The Alleged Misconduct.

The CFTC alleges four Counts in its Complaint: Counts I and II allege violations of the CEA and numerous federal regulations related to trading on the part of both EOX and Gizienski, and Counts III and IV allege failed supervision and recordkeeping on the part of EOX. (*Id.* ¶¶ 75–97.) It anonymized the identities of seven non-party individuals involved in the conduct giving rise to this lawsuit, specifically alleging that "Gizienski sought and obtained discretionary trading authority from Customer A, a successful trader and friend[.]" (*Id.* ¶ 31.) Such authority gave Gizienski the ability to execute block trades on Customer A's behalf "while continuing to work as a broker for other EOX customers[.]" (*Id.* ¶¶ 31–32.) Gizienski then "sought and obtained from EOX a waiver of the firm policy prohibiting brokers from exercising discretion over customer accounts." (*Id.* ¶ 31.) Gizienski was thus no longer a broker who simply matched a customer with another to facilitate and ultimately execute a block trade; he became a trader for Customer A whose role and duty was to act on his or her behalf and in his or her best interest in executing block trades. (*See id.* ¶¶ 31–32.) Then, from about August 2013 through May 2014, Gizienski allegedly disclosed material, nonpublic information to Customer A about EOX Customers B–F, as well as information known to another EOX customer and trader who was only identified in the complaint as a woman. (*Id.* ¶¶ 1, 34–53.) He also traded for Customer A while knowing such material, nonpublic information. (*Id.*)

In addition to alleging misconduct on Gizienski's behalf, the CFTC claims that EOX "has no policies or procedures in place relating to its brokers' written recordation of orders received from customers." (*Id.* ¶ 67.) The CFTC finally claims that "EOX did not establish, implement, or enforce any policies or procedures to monitor Gizienski's trading on behalf of Customer A[.]" (*Id.* ¶ 71.)

4

## C. Current Locations of Potential Witnesses.

The CFTC acknowledges that six current EOX officers and employees (other than Gizienski himself) work or reside in Houston and are likely to be witnesses in this case. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Trasnfer ("Transfer Opp'n"), ECF No. 37, at 4 (citing Joint Mem. of Law of Defs.' EOX Holdings LLC and Andrew Gizienski in Supp. of their Mot. to Transfer ("Transfer Mem."), ECF No. 21, at 4–6, 15).) Three customers, two of whom are based in Houston (Customers C and D), will also be called to testify. (*Id.* at 4–5; *see also* Dasso Decl. ¶ 11.) In total, eight of the material customers, officers, and employees of EOX who are expected to be deposed or otherwise provide helpful testimony about Gizienski's time as a broker on EOX's North East Power Desk during the relevant period either work or reside in Houston. (Transfer Mem. at 4–6; *see also* Transfer Opp'n at 4–5.) None of the principal witnesses or customers work or are located in New York. (Joint Reply of Defs.' EOX Holdings LLC and Andrew Gizienski in Supp. of Their Mot. to Transfer ("Transfer Reply"), ECF No. 42, at 3.) Customer A is alleged to live in Canada and Arizona, while Customers B, E, and F are alleged to live in New Jersey, Michigan, and Canada, respectively. (Dasso Decl. ¶ 11.) The additional EOX customer and trader is alleged to live in Maryland. (*Id.*) Other potential witnesses identified by the CFTC who are not essential to the underlying claims live in New Jersey, New York, Florida, South Carolina, Southern California, and/or Illinois. (*Id.*; *but see* Suppl. Decl. of Andrew Gizienski in Supp. of Defs.' Mot. to Transfer ("Suppl. Gizienski Decl."), ECF No. 43, ¶¶ 2–3) (stating that two of the CFTC's potential witnesses alleged to live in New York actually live in Southern California and South Carolina).)

5

## II. LEGAL STANDARDS

### A. Transfer Under § 1404(a), in the Interest of Justice and Convenience of the Parties and Witnesses.

Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a) (2012). This statute confers upon a district judge the discretion to grant a motion to transfer an action to another venue where the plaintiff could have filed the case originally. *See Hoffman v. Blaski*, 363 U.S. 335, 343–344 (1960); *see also Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). The burden of proof rests with the movant, who must show by clear and convincing evidence that "the balance of convenience strongly favors the alternate forum[.]" *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (quoting *Ayers v. Arabian American Oil Co.*, 571 F. Supp. 707, 709 (S.D.N.Y. 1983)). The Second Circuit has identified seven principal factors that are typically used to find such a balance:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*DH Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–107 (2d Cir. 2006) (citing *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)).

"A plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum." *Mitsui Marine and Fire Ins. Co. v. Nankai Travel Int'l Co., Inc.*, 245 F. Supp. 2d 523, 525 (S.D.N.Y. 2003) (citation omitted). Still, the party moving to transfer venue "must make 'a strong showing that the balance of convenience and the interest of

6

justice weigh heavily in favor of a transfer." *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 537 (S.D.N.Y. 2014).

When personal jurisdiction over a defendant likely exists in the transferee district, it is "prudentially appropriate to address venue first since a decision to transfer would render [a] personal jurisdiction analysis with respect to [the Southern District] irrelevant." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385 (S.D.N.Y. 2010). The same can be said for a transfer due to improper venue under § 1406. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 400 n. 3 (S.D.N.Y. 2004) ("In the Second Circuit, district courts may transfer an action 'even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district.'" (citing *Volk Corp. v. Art–Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y.1977)).

### III. DEFENDANTS' MOTION TO TRANSFER

#### A. The Southern District of Texas is the Appropriate Venue for the Convenience of the Parties and Witnesses.

As previously stated, a venue transfer "pursuant to § 1404(a) requires a two-part inquiry: first, 'whether the action to be transferred "might have been brought" in the transferee court'; and second, whether[,] 'considering the "convenience of parties and witnesses," and the "interest of justice," a transfer is appropriate.'" *Travelers Prop. Casualty Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 374 (W.D.N.Y. 2018) (citing *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). This Court need only address the second part of the § 1404 test because the parties agree that this action could have been brought in the Southern District of Texas. (Transfer Opp'n at 3 ("The CFTC does not dispute that this case could have been brought in the Southern District of Texas[.]"); Transfer Mem. at 7 ("Under the CEA's venue provision, this case 'might have been brought' in the Southern District of Texas, which includes Houston." (citing 7 U.S.C. § 13a-1(e))).)

7

### 1. The Plaintiff's Choice of Forum and the Locus of Operative Facts (Factors 1 and 5).

The weight given to a plaintiff's choice of forum is diminished when "the case's operative facts have little connection with the chosen forum." *Mitsui Marine*, 245 F. Supp. 2d at 525; *see also Nieves v. Am. Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (holding that this factor is weakened if the operative facts of the underlying claim "bear little material connection to the chosen forum."). Most notably, "[w]here there is no *material* connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action." *Manao Invs., Inc. v. Stouts Brunswick Assocs. Ltd. P'ship*, No. 96 Civ. 7100 (HB), 1997 WL 53200, at *2 (S.D.N.Y. Feb. 10, 1997). "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'" *Age Grp. Ltd. v. Regal Logistics, Corp.*, No. 06 Civ. 4328 (PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (quoting *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994)).

Here, the CFTC provides the following five reasons for choosing the Southern District of New York as the forum to litigate this case:

> (1) Defendants transact business here, (2) non-trivial acts relevant to the alleged violations occurred here, (3) both EOX and the CFTC have offices here; (4) it is centrally located amongst the many districts in which witnesses reside; and (5) the local interest in this matter given that it involves the brokering and trading of futures contracts listed on a New York-based exchange.

(Transfer Opp'n at 3–4.) Though it is true that EOX does business in New York by virtue of its New York office, the CFTC has not adequately demonstrated that non-trivial acts relevant to the violations alleged in the Complaint occurred in New York. The conduct giving rise to the Complaint is as follows: Gizienski executed block trades on Customer A's behalf "while continuing to work as a broker for other EOX customers[.]" (Compl. ¶ 31–32.) He then allegedly disclosed and traded on material, nonpublic information about EOX Customers B–F, as well as

8

information known to another EOX customer and trader. (*Id.* ¶ 34–53.) The Complaint does *not* allege that any of this conduct occurred in New York. Rather, it states that Gizienski works and resides in Houston, and did so when he engaged in the alleged misconduct during the relevant period. (*Id.* ¶ 13.) Therefore, the conduct underlying the Complaint—Gizienski's alleged conflict of interest and disclosure of material, nonpublic information—occurred while he was physically present *in* EOX's Houston office. The central facts of this case thus occurred in Houston.[2]

The CFTC argues that the alleged violations do not concern Gizienski alone, but that they also concern EOX, whose alleged misconduct is not limited to the Houston office. (Tr. of Oral Arg. dated Apr. 11, 2019, at 32:13–33:04.) Though the CFTC argues that Counts III and IV stem from EOX's alleged misconduct, Count IV clearly states:

> EOX violated 17 C.F.R. § 166.3 by, among other things: (i) failing to establish, implement, and enforce policies or procedures *to detect or prevent Gizienski's misuse of confidential customer information*; (ii) *failing to review Gizienski's discretionary trading, his communications with Customer A, or the brokerage services he provided to Customer A*; and (iii) failing to establish, implement, or enforce policies or procedures governing its brokers' handling of customer orders, the preparation and retention of required records, and the protection of confidential customer information.

(*Id.* ¶ 95 (emphasis added).) Count III similarly provides that EOX failed to keep books, records, and oral and written communications "[s]ince at least August 2013," when Gizienski is alleged to have initiated the inappropriate conduct giving rise to this action. (*Id.* ¶¶ 1, 86–92.) The fact that the CFTC charges EOX with failing to establish policies and to review discretionary trading to prevent Gizienski's alleged misconduct shows that his conduct is at the crux of this action. Indeed, it is his conduct that alerted the CFTC to EOX's alleged lax recordkeeping and employee oversight.

---

[2] *See, e.g.*, *United States v. Geibel*, 369 F.3d 682, 696–97 (2d Cir. 2004) ("In determining the constitutionally appropriate venue for an action, 'the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it . . . .'") (citing *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998)).

9

(*See* Compl. ¶¶ 62–74.) Gizienski's alleged misconduct—which occurred in Houston—thus gave rise to Counts III and IV.

New York is also not the most convenient forum to litigate this case simply because Gizienski is a trader on the North East Power Desk, which is situated in New York and Houston. (Transfer Opp'n at 7.) The fact that the North East Power Desk has two office locations does not mean that the alleged misconduct took place in both. As discussed above, the alleged misconduct by Gizienski occurred in Houston, irrespective of the North East Power Desk's New York presence. This analysis would of course be different if brokers in the New York office were instrumental to Gizienski's alleged misconduct. In *Wilson*, Judge Analisa Torres found that several people who "were necessary to the alleged scheme" lived in New York and "were . . . 'involved in financial transactions relating to the [dispute.]'" 27 F. Supp. 3d at 538. The same cannot be said here, where the CFTC fails to identify even one person in EOX's New York office who was "involved in" Gizienski's allegedly improper information-sharing. *See id.* EOX's office presence in New York is therefore inconsequential.

Finally, it is immaterial that Gizienski reported these contracts to IFUS because IFUS was not involved in the alleged misconduct, irrespective of its New York headquarters. (*See* Compl. ¶ 14.) The Complaint clearly states that IFUS is an electronic platform which "lists" futures and options contracts. (Compl. ¶ 14.) Listing contracts requires no active or otherwise material involvement from IFUS. This is in line with the practice of block trading because block trades are not public: they are privately negotiated transactions "*executed apart and [a]way from the open outcry or electronic markets.*" (*Id.* ¶ 18 (emphasis added).) Block trading thus, once again, distinguishes this case from other cases where courts in this district found the locus of operative facts to exist in New York because, in those cases, futures were being traded on *public exchanges*

*in New York*, and the alleged misconduct was specifically intertwined with those New York-based exchanges. *See Wilson*, 27 F. Supp. at 538 (finding that, although the trades at issue were manipulated on an electronic market and orders were received from market participants who were not physically present in New York, "the CFTC ha[d] alleged substantial contact with a number of New York-based entities and that the price manipulations in question occurred in this district."). In *Wilson*, the clearinghouses on which futures contracts were registered "were involved in *all aspects* of the [futures contract], including its creation, the rules governing its trading, and its pricing." *Id.* at 538 (emphasis added). That is not the case here. IFUS was not involved in any portion of the conduct giving rise to this lawsuit; Gizienski simply reported his trades to IFUS after the alleged misconduct took place. Moreover, even if IFUS's location were a significant factor, ICE markets—of which IFUS is a part—are hosted in Chicago and Atlanta—not New York— where IFUS is located. (Suppl. Decl. of William J. Nissen in Supp. of Defs.' Mot. to Transfer, Ex. F (How the ICE Market Works), ECF No. 44-4, at 46 ("All ICE markets . . . are hosted in the Chicago Data Centre. . . . Atlanta is the secondary data centre for all markets.").) IFUS's New York location therefore has little significance, if any, because IFUS's role is removed from Gizienski's alleged misconduct. Accordingly, the CFTC's choice of forum is entitled to little deference, if any, because none of the operative facts have a material connection to this district.

### 2. The Convenience of the Witnesses and Parties (Factors 2 and 4).

In deciding a motion to transfer, "courts typically regard the convenience of witnesses as the most important factor[.]" *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 227 (S.D.N.Y. 2015) (internal quotation mark omitted); *see also Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) ("The convenience of both party and nonparty witnesses is probably considered the single most important factor in

11

the analysis of whether a transfer should be granted.") (internal quotation marks omitted); *Fuji Photo*, 415 F. Supp. 2d at 373 (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998)) (same). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).

As to the material nonparty witnesses, two of the Customers who were allegedly wronged live in Houston. (Dasso Decl. ¶ 11.) None of the other Customers live in New York. (*Id.*) And as to the parties, seven material officers and employees, including Gizienski, work and live in Houston. (Transfer Opp'n at 4–5.) None of these individuals reside in New York. (*Id.*) While the CFTC attempts to identify additional witnesses who either reside in New York, New Jersey, South Carolina, Southern California, or Florida, none of these witnesses are likely to provide significant material information. (Dasso Decl. ¶ 11; *see also* Suppl. Gizienski Decl. ¶¶ 2–3.) For example, the CFTC claims that Tom Brady, Chris Hunter, Chris McQuade, and Howard Fishman, all living in New Jersey, New York, Southern California, and South Carolina, respectively, are able to provide testimony regarding "EOX's policies and procedures, recordkeeping practices, and brokerage desk's activities and practices; Gizienski's relationship with Customer A; and knowledge regarding allegations of unlawful or unethical conduct by Gizienski." (Dasso Decl. ¶ 11.) Still, the CFTC fails to explain how these witnesses are better situated to provide testimony on these topics than potential witnesses in EOX's Houston office, who are presumably much better situated to testify on these matters because they likely interacted with Gizienski on a daily basis and as such know more about his interactions with Customer A and other EOX clients during the

relevant period. The CFTC does provide that potential witnesses from IFUS, INTL FCStone, Inc., and Bank of America Merrill Lynch[3] may provide testimony, but it fails to name anyone for either entity or specify the number of potential witnesses for IFUS. (*Id.*) Such vague assertions cannot sway this Court when the central location of material witnesses clearly outweighs potential unidentified witnesses.

Accordingly, because nine material witnesses and parties reside in Houston, while other potential witnesses are dispersed throughout the country, the Southern District of Texas is the most convenient forum for the parties and witnesses.

### 3. The Availability of Process to Compel the Attendance of Unwilling Witnesses (Factor 6).

Another important consideration when determining whether venue transfer pursuant to § 1404(a) is appropriate is "[t]he availability of process to compel the testimony of important witnesses[.]" *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (quoting *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989)). "Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court." *In re Anadarko Petroleum Corp.*, Nos. 10 Civ. 4905, 10 Civ. 5894 (PGG), 2012 WL 12894796, at *8 (S.D.N.Y. Mar. 19, 2012).

Witnesses "under [a d]efendant's control . . . would . . . be available to testify in either venue." *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775 (LGS), 2016 WL 868335, at *2 (S.D.N.Y. Mar. 4, 2016); *see also Medien Patent Verwaltung AG v. Warner Bros.*

---

[3] Heather Dasso, a Senior Futures Trading Investigator in the Division of Enforcement, provides that, in her investigation of EOX, she "[r]eviewed emails, trading statements, financial records, and other documents produced by third parties, including American Express, Bank of America Merrill Lynch, INTL FCStone Financial Inc., ICE Futures U.S. ("IFUS"), and JPMorgan Chase Bank." (Dasso Decl. ¶ 4d.) Thus, the CFTC likely intend to call witnesses from these entities to attest to these records. Still, such entities do not appear to be significant in assessing the conduct alleged in this lawsuit. Indeed, these entities were not mentioned in either the CFTC's Complaint or in the body of its opposition brief.

13

*Entm't, Inc.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) (determining that "the movants have . . . not represented that these California-based witnesses—whoever they may be—would include anyone other than the movants' own employees. '[E]mployees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship.'").

Here, the CFTC correctly notes that Defendants fail to suggest that any of their proposed non-party witnesses would refuse to testify in this district. (Transfer Opp'n at 5; *see also Fuji Photo*, 415 F. Supp. 2d at 375 (finding that, because neither the plaintiffs nor the defendant indicated whether any non-party witness would be unwilling to testify, this factor had no impact on the analysis).) Therefore, absent an indication that a non-party witness is unwilling to testify in this case, the availability of compulsory process is immaterial to this Court's decision to transfer this case to the Southern District of Texas, and is thus neutral.

### 4. The Relative Means of the Parties (Factor 7).

When considering whether the "relative means of the parties favors transfer, a court should determine whether a party's 'financial situation would meaningfully impede its ability to litigate this case in either forum.'" *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *8 (quoting *In re Collins & Aikman Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006)). "[T]his factor has 'rarely been a dispositive reason to grant or deny a transfer motion[.]'" *Schoenefeld v. New York*, No. 08 Civ. 3269 (NRB), 2009 WL 1069159, at *3 (S.D.N.Y. Apr. 16, 2009) (quoting *Thomas Am. Corp. v. Fitzgerald*, No. 94 Civ. 0262 (CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994)).

Defendants do not suggest that they lack the financial means to litigate this case in New York; they merely argue that they are an individual and a private organization, while the CFTC has the resources of a federal agency. (Transfer Mem. at 13.) This is not enough information for

this Court to decide whether Defendants have more or less litigation resources than the CFTC or insufficient resources to travel to the Southern District of New York to litigate this case. This factor is thus neutral.

### 5. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof (Factor 3).

Defendants claim that the documents relevant to this case are located or maintained in EOX's Houston office, supporting a transfer to the Southern District of Texas. (Transfer Mem. at 10 ("[T]he documents relevant to this case are located or maintained by custodians located in EOX's office in Houston, and the witnesses who can testify to these documents are also located in Houston, so access to proof would be more convenient in the Southern District of Texas.") (citing Gizienski Decl. ¶ 5).) Though this may be true, this factor has been accorded less weight in recent years given the progression of electronic document management technology. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."); *see also In re ChannelAdvisor Corp. Sec. Litig.*, No. 15 Civ. 506 (AJN), 2015 WL 4064625, at *3 (S.D.N.Y. July 2, 2015) (holding that the location of relevant documents and ease of access to evidence is usually not a significant factor given the current technological age). As such, this factor is neutral as well.

It is therefore clear that four of the seven factors (1, 2, 4, and 5) used to determine convenience weigh heavily in favor of a venue transfer to the Southern District of Texas, while three factors (3, 6, and 7) are neutral. The factors weighing in Defendants' favor sufficiently demonstrate that the Southern District of Texas is the most convenient forum for this action, first because these factors are normally accorded more weight in a § 1404(a) analysis, but more importantly because they show that neither the locus of operative facts, witnesses, nor the parties

work or reside in New York. Because Defendants have shown by clear and convincing evidence that transfer to the Southern District of Texas is appropriate in the interest of justice, their motion to transfer pursuant to § 1404(a) is GRANTED.

## IV. CONCLUSION

Defendants' motions to transfer venue to the Southern District of Texas, (ECF No. 20), is GRANTED.[4] The Clerk of Court is respectfully directed to close ECF No. 22, accordingly.

Dated: July 31, 2019
New York, New York

SO ORDERED.

*George B Daniels*

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

---

[4] Because this Court grants Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a), Gizienski's motion to dismiss for lack of personal jurisdiction and improper venue is considered moot and withdrawn.